NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3855
_____

DANIEL THOMAS CARNEVALE,
                                        Appellant

v.

SUPERINTENDENT ALBION SCI;
THE ATTORNEY GENERAL OF
THE STATE OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-13-cv-00915)
Magistrate Judge:  Hon. Cynthia R. Eddy
_____

Argued
April 28, 2016

Before:  McKEE, *Chief Judge*, JORDAN, and ROTH, *Circuit Judges*.

(Filed: July 7, 2016)
_____

Casey Rankin  [ARGUED]
Chloe Zidian   [ARGUED]
Duquesne University School of Law
914 Fifth Avenue
Pittsburgh, PA   15219

Adrian N. Roe, Esq.
Federal Litigation Clinic
Duquesne University School of Law
600 Forbes Avenue, Tribone Center
Pittsburgh, PA   15282
        *Counsel for Appellant*

Keaton Carr, Esq.
Cory J. Schuster, Esq.   [ARGUED]
Allegheny County Office of District Attorney
436 Grant Street
Pittsburgh, PA   15219
        *Counsel for Appellees*

_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Daniel Thomas Carnevale appeals the order of the United States District Court for the Western District of Pennsylvania denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Although the Commonwealth mustered scant evidence of his guilt at trial, Carnevale presents no basis under federal law to accord him habeas relief.  We will therefore affirm.

## I.    Background

Carnevale was convicted in Pennsylvania state court in 2007 of three counts of murder, one count of aggravated assault, one count of burglary, and one count of arson. All those charges stemmed from a 1993 fire at the Columbia House Apartments in the

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

Bloomfield neighborhood of Pittsburgh, which resulted in three deaths and severe burns and injuries to a fourth victim.

The investigation immediately following the fire did not lead to an arrest, though law enforcement officers did look into Carnevale's potential involvement. Shane Evans, who knew Carnevale because they had both grown up in the neighborhood, told investigators that, shortly before the fire, he saw Carnevale near the door to the basement of the Columbia apartments, which is where the fire began. The police interviewed Carnevale, and he admitted that he supported himself largely by stealing checks from the mailboxes in the Columbia apartments' courtyard, but he denied involvement in the fire. After that interview, Carnevale stole a car and drove it to California, where he was arrested. He called the Pittsburgh police to tell them his whereabouts, and they told him that they would contact him if they planned to extradite him – but they did not do so in 1993, nor in the next dozen years.

In 2005, however, the cold case unit of the Pittsburgh Police Department's Homicide Unit re-opened the case on the Columbia fire. After the police published stories about the fire in a local newspaper, Evans came forward again to provide his account of seeing Carnevale near the apartment building on the night of the fire. Based on that account and the original case file, the police had Carnevale arrested in California in August 2006. Carnevale admitted to his drug abuse a nd check theft in 1993, but he continued to deny any involvement in the fire.

With just that evidence in hand – no more than the Commonwealth had in 1993 when it declined to prosecute or even arrest him – Carnevale was charged with murder,

3

assault, burglary, and arson. Only after Carnevale's 2006 arrest did the government's key evidence develop, in the form of Sean Burns's testimony. Burns was a fellow prisoner who testified that he befriended Carnevale while they were in jail together awaiting their respective trials. According to Burns, Carnevale broke down and confessed the arson in detail after learning that his wife was leaving him. That claimed confession was the first time that any motive for the arson had been suggested, namely that Carnevale had set the fire to try to destroy surveillance equipment that might have recorded him stealing checks.

At trial, Burns was the only witness who could decisively tie Carnevale to the arson. There was no physical evidence that survived the fire, nor fingerprints on the container of lacquer thinner that investigators believed to be the accelerant used to set the fire. In an attempt to undermine the Commonwealth's star witness, defense counsel emphasized to the jury on cross-examination that Burns was facing two felony firearms charges, and that he therefore had an incentive to testify favorably for the prosecution in the hopes of receiving lenient treatment himself. The defense further suggested that Burns could have easily fabricated his account from Carnevale's police reports. Defense counsel also pointed out several inconsistencies between Burns's account of the arson, as supposedly told to him by Carnevale, and the actual physical layout of the crime scene. Burns denied receiving any favorable treatment or promises from the prosecution, explaining that he was testifying out of a sense of justice for the victims.

Although the evidence against Carnevale hinged on a jailhouse informant's essentially uncorroborated testimony, the jury convicted him of all counts. He was

4

subsequently sentenced to life imprisonment. Carnevale filed post-trial motions requesting a new trial, all of which were denied.[1]

While appealing the conviction, the defense discovered two potentially suspicious instances of favorable treatment that Burns received after testifying. First, even though Burns had been denied nominal bond just days before Carnevale's trial, he was granted nominal bond almost immediately after the trial. Second, when Burns ultimately accepted a plea deal on his own charges, the government dropped the more serious count and recommended a below-guidelines sentence with immediate parole, which Burns received.

As relevant to the case before us, one argument that Carnevale raised on direct appeal was that the verdict was against the weight of the evidence. In support of that claim, Carnevale's attorney attached documents to his brief demonstrating Burns's favorable bond and sentencing treatment. Under Pennsylvania law, however, supporting documents must be included in the certified record, and simply attaching them to the brief is not sufficient to allow their consideration. As a result, the Superior Court deemed the argument to be waived. The failure to properly file those supporting documents,

---

[1] Although the record before us does not include the contents of those motions, the Pennsylvania courts on direct and collateral review treated them in a way that suggests that Carnevale requested a new trial on the basis that his conviction was based on insufficient evidence and was against the weight of the evidence. For instance, on direct appeal, the Superior Court considered an evidentiary objection waived because not raised in a post-trial motion, while it did not consider the sufficiency or weight of the evidence challenges so waived. Subsequently, the state collateral appeals courts considered the weight of the evidence claim as if it had been denied by the trial court.

which triggered waiver of the weight of the evidence claim, is the basis for Carnevale's present ineffective assistance of counsel claims.

Carnevale first pursued that ineffective assistance of counsel claim in Pennsylvania courts pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541, *et seq.* He argued, *inter alia*, that his direct appeals counsel had been constitutionally ineffective in forfeiting the weight of the evidence argument. The Court of Common Pleas rejected that argument on the grounds that Carnevale suffered no prejudice. The court said that the evidence against Carnevale at trial "was strong and supportive" of the verdict, so that "the weight of the evidence claim was itself meritless." (J.A. 628.) There was therefore no prejudice to Carnevale because he could not show that, "had counsel not caused the claim to be waived, the Superior Court would have reversed the judgment of sentence." (J.A. 629.) The court also considered the ineffective assistance claim in a different frame – namely, that counsel had been ineffective for failing to request a new trial based on after-discovered evidence of a deal between Burns and the Commonwealth. It rejected that version of the claim because the documents did not "show any evidence of the supposed 'deal' between the Commonwealth and Mr. Burns," so Carnevale would not have been "entitled to relief" even had his counsel squarely made the argument and properly filed the documents. (J.A. 633.) The Superior Court subsequently affirmed the Court of Common Pleas's denial of Carnevale's PCRA petition. *Commonwealth v. Carnevale*, No. 866 WDA 2011 (Pa. Super. Ct. July 20, 2012). The Supreme Court of Pennsylvania then denied his petition for allowance of appeal.

6

With his state collateral remedies exhausted, Carnevale filed a habeas corpus petition in the District Court for relief under 28 U.S.C. § 2254.[2] He made several arguments for relief before the District Court, including the two ineffective assistance of counsel claims now before us. As to those two claims, the District Court agreed with the Pennsylvania courts that Carnevale could not establish prejudice based on his direct appeals counsel's supposed ineffectiveness. The Court ruled that Carnevale "has failed to show how review on the merits under direct appeal would have yielded a different outcome than the decisions of the jury, the PCRA court, and this Court." (J.A. 27.) Although the District Court denied Carnevale's request for a certificate of appealability, he appealed that ruling, and we granted a certificate on two issues, namely Carnevale's

> claims that counsel during the period for filing post-trial motions and on direct appeal was ineffective for failing to present after-discovered evidence that (1) a prosecution witness falsified his story concerning Appellant's guilt and (2) contrary to his claim at trial, the witness received prosecutorial leniency as a result of his testimony.

(J.A. 36.) We also appointed pro bono counsel.[3]

---

[2] With the consent of Carnevale and the Commonwealth, this case was conducted by a magistrate judge in the District Court pursuant to 28 U.S.C. § 636(c)(1).

[3] We thank the Federal Practice Clinic of the Duquesne University School of Law for their willingness to assist the Court and Mr. Carnevale in this matter, and we commend the representation provided.

7

## II.    Discussion[4]

### A.    *Strickland* and AEDPA

Because Carnevale's claim is that his counsel provided constitutionally ineffective assistance, he must meet the standard established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which has "two components":

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

As to the deficiency prong, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* at 687. To satisfy the prejudice prong, Carnevale "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In a case involving an allegation of ineffectiveness of appellate counsel, proving prejudice requires the petitioner to "show a reasonable probability that, but for his counsel's unreasonable failure ..., he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

We review ineffective assistance claims like Carnevale's through the lens of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Under

---

[4] The District Court had jurisdiction under 28 U.S.C. § 2254(a). We exercise appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. "We review *de novo* whether the District Court appropriately applied [28 U.S.C. § 2254's] standards of review." *Taylor v. Horn*, 504 F.3d 416, 428 (3d Cir. 2007).

AEDPA, we do not disturb a legal determination of a state court unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d)(1)-(2). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is ... difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). To satisfy the prejudice prong of *Strickland* under the strictures of AEDPA, Carnevale must show that it was "unreasonable for the [Pennsylvania courts] to conclude [that his] evidence of prejudice fell short of [*Strickland*'s] standard." *Id*. at 112.

Importantly, a federal court may not grant habeas relief on state law grounds, but "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "[A] state court's interpretation of state law ... binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Carnevale thus cannot prevail by asking us to second-guess the Pennsylvania courts' state law determinations, and that is what ultimately forecloses his appeal.

It is not entirely clear to us what theory Carnevale is advancing to show that he was prejudiced by appellate counsel's failure to properly file the documents regarding Burns's bond and plea deal. For completeness, we will consider both the "weight of the

9

evidence" and the "after-discovered evidence" claims advanced in the PCRA proceedings.

**B.     Weight of the Evidence**

The first of Carnevale's ineffective assistance claims is that, by causing the Superior Court to treat the weight of the evidence claim as waived, Carnevale's counsel cost him the opportunity to be granted a new trial. Carnevale faces a heavy burden to prove prejudice under Pennsylvania law, however, because a weight of the evidence claim only rarely succeeds in reversing a trial court's decision not to grant a new trial:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  ...  *One of the least assailable reasons* for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (emphasis added). Given that deferential review, an appellate court should only reverse a trial court's denial of a new trial on weight of the evidence grounds when the "course pursued [by the trial court] represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Id.* (quoting *Coker v. S.M. Flickinger Co.*, 625 A.2d 1181, 1185 (Pa. 1993)).

Were we in the jury box at Carnevale's trial, we very likely would have weighed the evidence against him differently than did the actual jury. And were we the trial court reviewing a challenge to the verdict, we would likely have concluded it was against the

10

weight of the evidence. But we had neither of those roles and cannot assume them now. As a federal appellate court acting under AEDPA, we cannot even place ourselves in the shoes of a state appellate court and determine whether we would have reversed the trial court's decision not to grant a new trial. "AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). Accordingly, we evaluate not whether the state court's opinion "was correct," but rather whether it was unreasonable in applying the *Strickland* prejudice standard. *Id.* (emphasis omitted).

In this case, during Carnevale's state PCRA proceedings, both the Court of Common Pleas and the Superior Court considered the weight of the evidence claim on the merits and determined it to be insufficient to warrant a new trial under Pennsylvania law. The state courts' determination of state law binds us, *Bradshaw*, 546 U.S. at 76, and thus establishes for our purposes that Carnevale's weight of the evidence claim lacked merit under Pennsylvania law, even had it been properly presented by appellate counsel. That precludes Carnevale from showing that he was prejudiced by appellate counsel's alleged ineffectiveness, and his Sixth Amendment *Strickland* claim fails.[5] Carnevale

---

[5] The District Court rejected the weight of the evidence claim by concluding "that the sufficiency of the evidence claim is without merit." (J.A. 27.) That was error because, under Pennsylvania law, a sufficiency challenge and a weight challenge are "discrete inquiries." *Commonwealth v. Whiteman*, 485 A.2d 459, 461 (Pa. Super. Ct. 1984) (internal quotation marks omitted). "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner [as it would be in a sufficiency

11

does not show, or even assert, that the Superior Court's acceptance of the trial court's acceptance of the jury's verdict runs afoul of some other federal law protection, so he is left with no basis for habeas relief.

## C.     After-Discovered Evidence

Carnevale's argument may also be framed as renewing the after-discovered evidence claim he pressed during PCRA review.[6]  As explained above, the state courts rejected that argument because the Burns documents would not have warranted a new trial, so there could be no prejudice from a failure to properly raise that claim.

Under Pennsylvania's PCRA statute, a petitioner can obtain relief from a conviction based on "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced."  42 Pa. Cons. Stat. § 9543(a)(2)(vi).  To obtain such relief,

> Appellant must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

*Commonwealth v. Washington*, 927 A.2d 586, 595-96 (Pa. 2007).

On PCRA review, the Court of Common Pleas concluded that the Burns documents did not constitute after-discovered evidence because they did not show a deal between the Commonwealth and Burns tied to his testimony in Carnevale's trial.  The

---

challenge]."  *Widmer*, 744 A.2d at 751 (internal citations omitted).  Applying the proper standard, however, we come to the same final conclusion as did the District Court.

[6] The District Court was presented with this argument, but it did not squarely address it.

12

Superior Court agreed, and further held that the evidence that did exist "would have been used solely to impeach Mr. Burns'[s] credibility, which is an unacceptable use of after-discovered evidence" under the *Washington* test. *Commonwealth v. Carnevale*, No. 866 WDA 2011, slip op. at 12-13 (Pa. Super. Ct. July 20, 2012). Thus, at the PCRA trial and appellate levels, Pennsylvania courts made merits determinations that the documentation would not have entitled Carnevale to a new trial, even had it been presented on direct appeal.

We therefore face once more a state law determination, on the merits, that the Burns documents would not have entitled Carnevale to a new trial. Under AEDPA, we are bound by that state court determination on a state law issue.[7] *Bradshaw*, 546 U.S. at 76. Because that state law ruling rebuts Carnevale's theory for showing prejudice, we cannot say it was unreasonable for the Pennsylvania courts to conclude that Carnevale was not prejudiced by the failure to properly make an after-discovered evidence claim. Therefore, again, his ineffective assistance of counsel claim fails.[8]

---

[7] Insofar as Carnevale challenges that conclusion, it is through analogy to *Grant v. Lockett*, 709 F.3d 224, 234 (3d Cir. 2013), in which we determined that trial counsel had been constitutionally ineffective for failing to "make reasonable efforts to learn that" the "Commonwealth's key witness" "was on parole," which would have allowed the defense to impeach the witness. But Carnevale's case is not analogous to *Grant*, because Burns's pending prosecution was known to defense counsel, and Burns was, in fact, cross-examined on that basis. Carnevale's trial counsel was therefore effective in exactly the way that we held trial counsel in *Grant* was not.

[8] Carnevale also obliquely suggests that the Commonwealth may have concealed evidence of a deal with Burns, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). He cites several cases involving *Brady* claims and states that his "case poses a *potential* violation" of *Brady* "due to the prosecution's failure to disclose favorable treatment towards the key witness in exchange for testimony against Carnevale ... ." (Reply Br. at 12 (emphasis added).) He does not, however, squarely allege a *Brady* violation, nor do

13

## III.   Conclusion

For the foregoing reasons, we will affirm the order of the District Court denying Carnevale's petition for a writ of habeas corpus.

---

the Burns documents establish that any undisclosed deal existed. We do not consider a *Brady* claim as having been properly raised before us.  Even liberally construing Carnevale's *pro se* brief before the District Court, it does not make out a *Brady* claim, and the District Court opinion accordingly includes no mention of *Brady*.  In general, "arguments not raised before the District Court are waived on appeal," *DIRECTV Inc. v. Seijas*, 508 F.3d 123, 125 n.1 (3d Cir. 2007), a principle even more stringently applied in the habeas context where a certificate of appealability is required that "indicate[s] which specific issue" is being appealed, 28 U.S.C. § 2253(c)(3).

The certificate of appealability also included a second type of claim: that Carnevale's counsel was ineffective for "failing to present after-discovered evidence that ... a prosecution witness falsified his story concerning [Carnevale's] guilt ... ."  (J.A. 36.) That refers to an affidavit from fellow prisoner David Dixon, who averred that Burns told Dixon that he had "fabricated" Carnevale's confession "to gain favor with the D.A." (J.A. 764.)  We agree with the Commonwealth, however, that Carnevale has waived any argument with regard to the Dixon affidavit.  The only mentions of the Dixon affidavit in Carnevale's briefs are cursory references in a pair of footnotes, neither of which makes a substantive argument for habeas corpus relief.  "[A]ppellants are required to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief. ...  [I]f an appellant fails to comply with these requirements on a particular issue, the appellant normally has abandoned and waived that issue on appeal ... ." *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).  Passing reference in a footnote without legal argument is insufficient to present an issue. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).