EDUARDO C. ROBRENO, District Judge
In a consolidated bench trial, Petitioner Tyrone Johnston ("Petitioner") was convicted of the first-degree murders of Jamel Conner and Stephanie Labance.[2] Petitioner was sentenced to life imprisonment for each murder conviction. In relation to his conviction for the murder of Ms. Labance, Petitioner filed a pro se petition (the "Petition") for a writ of habeas corpus under 28 U.S.C. § 2254 seeking relief on multiple grounds.
The case was referred to Magistrate Judge Lynne Sitarski for a report and recommendation ("R & R"). Magistrate Judge Sitarski recommended that the Petition be denied on all nine grounds raised. Petitioner conceded the R & R on all but two grounds, objecting to the recommendations to deny relief for his claims that he suffered from: 1) a violation of the Sixth Amendment's Confrontation Clause in relation to the admission of autopsy reports and testimony of a medical examiner who did not conduct the autopsies (Ground Two); and 2) ineffective assistance of counsel in relation to trial counsel's failure to seek relief for lack of a speedy trial (Ground Four).
For the reasons set forth below, the Court approves the R & R as to Grounds One, Three, Five, Six, Seven, Eight, and Nine denies the Petition on those grounds. Following de novo review of Grounds Two and Four, the Court denies the Petition on those grounds. Finding no merit to any of the grounds raised, the Court denies issuing a writ of habeas corpus and denies issuing a certificate of appealability.
Table of Contents
I. BACKGROUND...425
A. Procedural History...425
B. Ground Two -- Violation of the Confrontation Clause...426
C. Ground Four -- Ineffective Assistance of Counsel for Failure to Raise a Speedy Trial Claim...427
II. LEGAL STANDARD FOR HABEAS RELIEF...429
A. Procedural Requirements...429
B. Referral to a Magistrate Judge for Report and Recommendation...431 *425 C. Merits of Habeas Petition...431
III. GROUND TWO -- CONFRONTATION CLAUSE...432
A. Clearly established Federal law...433
B. Determination of the facts...435
C. Conclusion...435
IV. GROUND FOUR -- INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE A RULE 600 CLAIM...436
V. GROUND FOUR -- INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE A SIXTH AMENDMENT CLAIM...436
A. The R & R and Petitioner's Objections...436
B. Petitioner's claim is unexhausted and procedurally defaulted...437
C. The merits of the Sixth Amendment-based claim...438
VI. GROUNDS ONE, THREE, AND FIVE TO NINE...442
VII. CERTIFICATE OF APPEALABILITY...442
VIII. CONCLUSION ...442
I. BACKGROUND
A. Procedural History
This case proceeded through the state courts in a complicated manner that is not relevant to the Petition.[3] Accordingly, a recitation of only the pertinent aspects of the case will suffice at this juncture.[4]
Petitioner was tried in the Philadelphia Court of Common Pleas ("Trial Court") and convicted of the first-degree murders of Stephanie Labance (Indictment No. CP-51-CR-1300475-2006) and Jamel Conner (Indictment No. CP-51-CR-0004489-2007), and other crimes related to the two murders. See ECF No. 1, Ex. A at 1 n.1 (Post-Conviction Relief Act Court Opinion, April 28, 2014).
Following the protracted post-trial state court proceedings, Petitioner filed a § 2254 petition raising eight grounds for relief in connection with his conviction for the first-degree murder of Stephanie Labance. See ECF No. 1 at 10-20; see also ECF No. 32 at 4-5. The Commonwealth of Pennsylvania filed a response in opposition to the Petition, ECF No. 23, and Petitioner filed a reply, ECF No. 28, in which he raised an additional ground that was not in the Petition. See ECF No. 32 at 5-6.
The R & R addressed all nine grounds brought by the Petitioner during the § 2254 proceedings, and all nine were recommended for denial. See id. at 39. Petitioner objected on only two grounds, and "concede[d] to the remaining [seven grounds] as presented [in the R & R]."[5]
*426 ECF No. 39 ¶ 20. The objections relate to Ground Two (violation of the Confrontation Clause) and Ground Four (ineffective assistance of counsel for failure to raise a speedy trial claim). See id. ¶¶ 21-40; ¶¶ 41-75. The following sections discuss the substance of Petitioner's claims on these two grounds and the relevant post-conviction filings.
B. Ground Two -- Violation of the Confrontation Clause
1. Facts relating to the trial
During the trial, Assistant Medical Examiner Dr. Gary Collins was permitted to testify regarding the cause and manner of death of Ms. Labance, as well as the other victim, Mr. Conner. ECF No. 30-2 at 138:9-186:13 (N.T. Feb. 25, 2009). However, Dr. Collins neither conducted nor was present at either of the autopsies; Dr. Ian Hood conducted Ms. Labance's autopsy, and Dr. Gregory McDonald conducted Mr. Conner's autopsy. Id. at 142:13-143:12. At the time of the trial, Drs. Hood and McDonald were no longer employed by the Philadelphia Medical Examiner's Office. Id. at 143:2-15. To prepare for his testimony, Dr. Collins reviewed the written reports by Drs. Hood and McDonald, as well as the autopsy photographs and toxicology reports. Id. at 143:16-144:4; 173:6-22.
At the beginning of Dr. Collins's testimony, the Commonwealth conducted voir dire as to his qualifications and experience. Id. at 138:22-141:18. The Commonwealth then tendered Dr. Collins as "an expert in the field of forensic pathology."Id. at 141:19-21. Defense counsel opted not to conduct voir dire of Dr. Collins. Id. at 141:22-142:4. The court qualified Dr. Collins as competent to testify by way of expert opinion in the field of forensic pathology. Id. at 142:5-7; Pa. R. Evid. 702.
After Dr. Collins had testified about who had conducted the autopsies and written the reports in the case, he was asked whether he was "able to draw a conclusion [himself] regarding the cause and manner of death of Mr. Jamel Conner, based on the information [he] received from Dr. McDonald's examination." Id. at 144:12-15. Defense counsel objected on the basis that Dr. Collins "didn't view the body, and [was] not competent to testify as to the autopsy results merely from reading someone else's report." Id. at 144:18-21. Dr. Collins then testified that he was able to give competent testimony and had given testimony in similar circumstances, and for both Drs. McDonald and Hood. Id. at 144:24-145:20; 146:6-11.
After a few more questions, defense counsel again objected, and a lengthy sidebar discussion ensued. Id. at 147:18-148:20; 150:5-159:14. Defense counsel explicitly stated that the objection was not to Dr. Collins being allowed to refer to the report, but to the fact that there were additional photographs that had not been provided to the defense in discovery. Id. at 148:2-20. The court and counsel discussed Dr. Collins's ability to testify about the cause of death based on the photographs or contents of the report; whether a defense expert could, in theory, testify from the same materials; whether there were issues actually in dispute concerning the victims being shot, the wound paths caused *427 by the bullets, and the gunshots as a cause of death; and whether the autopsy reports were business records. Id. at 147:18-148:20; 150:5-159:14. Defense counsel indicated that the cause of death from multiple gunshot wounds was not disputed. Id. at 153:16-154:8; 155:19-156:8. Further, defense counsel conceded that a defense expert could base his or her testimony on the report and photographs, but there would likely be additional photographs of the inside of the body. Id. at 154:9-155:18. Although there was some discussion of business records, defense counsel did not clearly raise a hearsay objection. The court allowed Dr. Collins to continue his testimony. Id. at 159:7-9.
2. Post-trial proceedings
Following the denial of his post-sentencing motions, Petitioner appealed, raising several challenges including the allegation that his right to confront adverse witnesses had been violated. SCR No. D10; SCR No. D13 at 2, 5, 8-9. On direct appeal, the Superior Court affirmed the Trial Court. SCR No. D15 at 1; 8-10; see also ECF No. 23-1. Like the Trial Court, the Superior Court reasoned that Dr. Collins had not simply read in portions of another medical examiner's report, but gave his own opinions based on the facts in the reports and the photographs. SCR No. D15 at 9. Furthermore, the Superior Court noted that defense counsel took the opportunity to cross-examine Dr. Collins. Id.
3. Habeas petition
In the Petition, Petitioner asserts that his rights under the Constitution were violated because he was prevented from confronting and cross-examining the medical examiner who performed the autopsy and wrote the report. ECF No. 1 at 10.
Petitioner argues that the state courts adjudicated his claim by finding that: 1) "the autopsy reports were non-testimonial and thus did not violate petitioner['s] confrontation rights," and 2) both [Drs. McDonald and Hood] were unavailable to testify." ECF No. 6 at 11. Petitioner further argues that the state courts should have taken existing Supreme Court precedent that was not directly on point and extended it to his case, and that to not do so was unreasonable. Id. at 14-15.
C. Ground Four -- Ineffective Assistance of Counsel for Failure to Raise a Speedy Trial Claim
1. Facts relating to the trial
The criminal complaint for the killing of Ms. Labance was filed on July 14, 2006, and the trial began on February 17, 2009.[6] See ECF No. 23-3 at 2. Trial counsel did not file a motion asserting a denial of Petitioner's right to a speedy trial.
2. Post-trial proceedings
Following his conviction, Petitioner asserted an ineffective assistance claim pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA") ( 42 Pa. Cons. Stat. §§ 9541 -46). First, acting pro se, Petitioner filed a PCRA petition listing the indictment numbers for both murder convictions. SCR No. D17, Motion for Post Conviction Collateral Relief at 1. In the PCRA petition, Petitioner indicated that he was eligible for relief, in part, because of a violation of the Constitution of Pennsylvania or the Constitution of the United States, and for ineffective assistance of counsel. Id. at 2. Petitioner filed a memorandum of law in support of his PCRA petition, but only listed the indictment number for the Labance conviction. SCR No. D18 at 1. In the memorandum, Petitioner indicated the same general bases for relief, and then stated four issues: (a)
*428 denial of his constitutional rights in relation to the arraignment; (b) denial of his constitutional rights in relation to pretrial conference hearings; (c) trial counsel's failures during plea negotiations; and (d) "Trial Counsel's fail[ure] to raise [Petitioner's] right to a speedy trial pursuant to the 6th and 14th Amendment[s] to the U.S. Constitution." Id. ¶¶ 12-13. The memorandum presented the facts and legal arguments for each of the four issues, including the Sixth Amendment claims. See id. ¶ 30.
Subsequently, attorney John P. Cotter entered his appearance for petitioner, and filed a document titled "Amended Petition under Post-Conviction Relief Act" bearing only the indictment number for the Labance conviction. See SCR No. D21, Amended Petition at 1. In the amended PCRA petition, attorney Cotter stated: "This Amended Petition specifically incorporates all factual allegations in [the original PCRA petition] as though expressly set forth herein." Id., Amended Petition ¶ 4. The amended PCRA petition then stated that Petitioner was asserting violations of the Constitutions of the U.S. and Pennsylvania, as well as Pennsylvania's Rules of Criminal Procedure:
Petitioner, hereafter also referred to as the defendant, believes and therefore avers the following errors entitling him to relief in this Court:
a. Defendant's trial defense counsel was ineffective because he failed to file and litigate an omnibus motion requesting that the charges against defendant be dismissed with prejudice for lack of speedy trial under the U.S. and Commonwealth Constitutions and Pa. Rule of Crim. Pro. 600.
Id., Amended Petition ¶ 5. The remainder of that paragraph listed facts and allegations about the timing and delays. See id.
The amended PCRA petition was accompanied by a memorandum of law (again bearing only the indictment number for the Labance conviction) that made legal arguments in specific regard to Pennsylvania Rule of Criminal Procedure 600 (" Rule 600"). Id., Memorandum in Support of Amended Petition at 1, 2-4. The Sixth Amendment was not at all mentioned, and the words "U.S. Constitution" make only an evanescent appearance. See id., Memorandum in Support of Amended Petition at 1.
The Commonwealth moved to dismiss the petition, arguing solely that Petitioner's Rule 600 claim was meritless. See SCR No. D22. The Commonwealth challenged how and why Petitioner had attributed to the Commonwealth all of the delays in bringing the case to trial that were not caused by the Petitioner. See id. The Commonwealth's motion to dismiss listed both of the indictment numbers and contained docket sheets for both convictions as exhibits. Id. at 1, Exs. A, B.
Subsequently, the Commonwealth moved to file a corrected motion. SCR No. D23. Counsel for the Commonwealth explained that he had inherited the case and had only the amended PCRA petition in the file, and so had moved to dismiss both cases by challenging the Rule 600 claims in the amended PCRA petition. Id. at 1. The Commonwealth's counsel explained that he had been contacted by Petitioner's PCRA counsel, attorney Cotter, who had explained that the Rule 600 claim pertained only to the Labance conviction, and that a separate petition had been filed in connection to the Conner conviction. Id.
The Commonwealth then filed an amended motion to dismiss, making the same substantive arguments but noting the separate proceedings. See SCR No. D24.
*429 The PCRA Court held an evidentiary hearing as to the Rule 600 issue, and then denied the PCRA petition. See ECF No. 1, Ex. A at 3 (see also SCR No. D29); ECF No. 30-6 (transcript of hearing held on November 25, 2013); SCR No. D26, Criminal Docket.
Attorney Cotter filed a notice of appeal of the PCRA Court's decision. SCR No. D26. Pursuant to an order of the PCRA Court, issued under Pennsylvania Rule of Appellate Procedure 1925(b), the notice of appeal identified several errors complained of on appeal. SCR No. D28. The errors listed included trial counsel's failure to file a motion to dismiss for lack of a speedy trial, and the denial of the "U.S. and State Constitutional right to a speedy/prompt trial." Id.
Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the PCRA Court issued its opinion and explained why the Rule 600 claim failed, thoroughly listing the delays and the bases for attributing or excusing those delays in bringing the case to trial. ECF No. 1, Ex. A at 26-30. The PCRA Court's opinion did not mention either the Sixth Amendment or the U.S. Constitution in connection to the claim. See id.
Petitioner maintained his appeal to the Superior Court. Attorney Cotter filed the brief in support and included the 1925(b) statement listing the alleged errors. ECF No. 23-6. The sections in the brief covering the "statement of the case" and the "summary of the argument" refer only to Rule 600, arguing that trial counsel did not file a pre-trial Rule 600 motion despite there being a Rule 600 violation. Id. at 5. Throughout the brief, the argument concerned Rule 600. Id. at 6-8. In one, and only one instance, the brief mentions peripherally the Sixth Amendment:
The Purpose of Pa. R. Crim. P. 600. Prompt Trial. is to protect the United States and Commonwealth Constitutional Rights of the defendant to a speedy trial. See Pa. Const. Art. I sec. 9. and 6th Amendment U.S. Constitution; Commonwealth v. Hamilton, [449 Pa. 297,] 297 A.2d 127 ( [Pa.] 1972).
Id. at 7 (emphasis in original).
The Superior Court affirmed the PCRA Court's denial of the PCRA petition. ECF No. 23-3 at 12. After explaining the contours of Rule 600 and its application, the Superior Court determined there was no merit to the Rule 600 claim. Id. at 6-12. The Superior Court's opinion did not mention the Sixth Amendment. See id.
3. Habeas petition
In the Petition, Petitioner asserts he was "denied effective assistance of counsel when [his attorney] failed to file and litigate a speedy trial motion." ECF No. 1 at 15.
II. LEGAL STANDARD FOR HABEAS RELIEF
A. Procedural Requirements
"State courts, like federal courts, are obliged to enforce federal law." O'Sullivan v. Boerckel, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). State courts are the "principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). Nonetheless, pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a person in state custody who wishes to assert that "he is in custody in violation of the Constitution or laws or treaties of the United States" may file a petition in federal court seeking the issuance of a writ of habeas corpus. See 28 U.S.C. § 2254.
State courts have an initial "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."
*430 Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (quotation marks omitted) (citation omitted). To respect the state's sovereign powers, the AEDPA has a procedural requirement that the petitioner must first exhaust the remedies available in the state court. Id. § 2254(b)(1) ; Harrington, 562 U.S. at 103, 131 S.Ct. 770 ("[A] habeas petitioner challenging a state conviction must first attempt to present his claim in state court.") (citing 28 U.S.C. § 2254(b) ).
To satisfy the exhaustion requirement, a federal claim must be "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (quotation marks omitted) (emphasis in original); see also Picard, 404 U.S. at 276, 92 S.Ct. 509 ("Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). Fair presentation requires a petitioner to present "the federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." Mathias v. Superintendent Frackville SCI, 876 F.3d 462, 479 (3d Cir. 2017), cert. denied sub nom. Mathias v. Brittain, --- U.S. ----, 138 S.Ct. 1707, 200 L.Ed.2d 961 (2018) (quotation marks omitted) (quoting Robinson v. Beard, 762 F.3d 316, 328 (3d Cir. 2014) ); see also Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).
To complete the exhaustion requirement, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845, 119 S.Ct. 1728. The Pennsylvania Supreme Court has ordered that "in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error."In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000); see also Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004). Thus, in Pennsylvania, one complete round of appellate review includes fairly presenting the federal claim through the Superior Court, and a petitioner "need not seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a full opportunity to resolve any constitutional claims." Lambert, 387 F.3d at 233-34.
A petitioner who fails to properly present federal claims to the state court in a timely fashion under state law rules procedurally defaults on those claims. O'Sullivan, 526 U.S. at 848, 119 S.Ct. 1728. A federal court may not review the defaulted claims unless the petitioner can demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).
To show "cause," a petitioner must show "some external impediment preventing counsel from constructing or raising the claim." Goldblum v. Klem, 510 F.3d 204, 215 (3d Cir. 2007) (quoting McCleskey v. Zant, 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) ). The prejudice must be "actual prejudice," and the petitioner must show that the "errors ... worked to his actual and substantial disadvantage, infecting his entire trial with *431 error of constitutional dimensions." Id. at 215-16 (quoting United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) ).
"The fundamental miscarriage of justice exception is narrow." Coleman v. Greene, 845 F.3d 73 (3d Cir. 2017). It only applies to "cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted the petitioner." McQuiggin v. Perkins, 569 U.S. 383, 395, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) (quotation marks and alterations omitted).
B. Referral to a Magistrate Judge for Report and Recommendation
A district court may refer an application for a writ of habeas corpus to a United States magistrate judge for a report and recommendation. See Rules Governing § 2254 Cases, R. 10 ("A magistrate judge may perform the duties of a district judge under these rules, as authorized under 28 U.S.C. § 636."). A prisoner may object to the magistrate judge's report and recommendation within fourteen days after being served with a copy thereof. See 28 U.S.C. § 636(b)(1) ; E.D. Pa. Local Civ. R. 72.1(IV)(b). The district court then "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).
Ultimately, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A court is not required to review general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) ("We have provided that § 636(b)(1) requires district courts to review such objections de novo unless the objection is 'not timely or not specific.' " (emphasis added) (quoting Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984) ).
C. Merits of Habeas Petition
A federal court may only grant relief in a § 2254 habeas petition if the state court's adjudication of the merits of the claims raised resulted in a decision that was: "(1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).
The Supreme Court has explained the necessary analysis for each clause of § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).
In both of the "unreasonable" clauses, "the federal habeas court [is] to train its attention on the particular reasons--both legal and factual--why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision." Wilson v. Sellers, --- U.S. ----, 138 S.Ct. 1188, 1191-92, 200 L.Ed.2d 530 (2018) (quotation marks and citations omitted). "[W]hen the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion ..., a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." Id. at 1192.
"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the *432 Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. 1495. "[T]he 'unreasonable application' inquiry ... asks whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 120 S.Ct. 1495. "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410, 120 S.Ct. 1495. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411, 120 S.Ct. 1495.
Under the "unreasonable determination of the facts" clause, "state-court factual determinations [may not be characterized] as unreasonable merely because [the federal court] would have reached a different conclusion in the first instance." Brumfield v. Cain, --- U.S. ----, 135 S.Ct. 2269, 2277, 192 L.Ed.2d 356 (2015) (quotation marks omitted) (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010) ). Rather, the federal court "must accord the state trial court substantial deference." Id."State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' " Davis v. Ayala, --- U.S. ----, 135 S.Ct. 2187, 2199-200, 192 L.Ed.2d 323 (2015) (quoting Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) ).
A federal court cannot grant habeas relief on state law grounds. Sistrunk v. Rozum, 674 F.3d 181, 186 (3d Cir. 2012). Instead, a federal court may only grant relief on the ground that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) ; see also Carnevale v. Superintendent Albion Sci, 654 F. App'x 542, 547 (3d Cir. 2016) (quoting 28 U.S.C. § 2254(a) ). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) ; see also Rountree v. Balicki, 640 F.3d 530, 539 (3d Cir. 2011) ("The District Court ... was bound to accept the state court's conclusions of state law in applying [the state's rules].").
In conducting its review of a habeas petition, the federal court should bear in mind that "[a] habeas corpus petition prepared by a prisoner without legal assistance may not be skillfully drawn and should thus be read generously." Rainey v. Varner, 603 F.3d 189, 198 (3d Cir. 2010) ; see also U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) ("It is the policy of the courts to give a liberal construction to pro se habeas petitions.").
Petitioner has filed objections to Ground Two (seeking relief based on the alleged violation of the "Confrontation Clause") and Ground Four (seeking relief based on the alleged failure of counsel to challenge a violation of Pennsylvania's speedy trial protections under Rule 600 ). The Court makes a de novo determination of the merits of Grounds Two and Four, as discussed below.
III. GROUND TWO -- CONFRONTATION CLAUSE
Petitioner's Confrontation Clause claim went through one complete round of appellate review by the state courts. Therefore, the Court may consider the merits of Petitioner's argument in support of his petition for habeas relief.
The Court denies the Petition on this ground for failing to meet either of the two *433 tests in § 2254(d). First, the state courts did not adjudicate the Confrontation Clause claim "contrary to, or [by] involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Petitioner concedes that there is no clearly established Federal law concerning autopsy reports. Furthermore, given the disagreement among the Circuit Courts of Appeals, it was not so obvious that any fairminded jurist would find that the autopsy reports were testimonial.
Second, the state courts did not adjudicate the claim "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The state courts made no finding about the availability of the medical examiners who wrote the autopsy reports. Furthermore, the state courts did not have to rule on a hearsay objection to the reports because none was made.
A. Clearly established Federal law
The Sixth Amendment's Confrontation Clause guarantees that a criminal defendant has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause prevents the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Davis v. Washington, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (quoting Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ). The "testimonial character of the statement ... separates it from other [types of] hearsay." Id.
Petitioner argues that the autopsy reports were testimonial. But the Supreme Court has not ruled on whether autopsy reports are testimonial or not, and Petitioner and the Commonwealth agree that there is no Supreme Court precedent holding that autopsy reports are testimonial. See ECF No. 6 at 14 ("The mere fact that no United States Supreme Court decision is directly on point and says autopsy reports are testimonial, does not in and of itself defeat petitioner's claim."); ECF No. 23 at 20 n.6 ("The question of whether autopsy reports are 'testimonial' is unsettled."). Indeed, the Commonwealth cites decisions from the Second and Eleventh Circuit Courts of Appeals to illustrate the division, and a First Circuit decision making the same point. See ECF No. 23 at 20 n.6 (citing United States v. James, 712 F.3d 79, 97-100 (2d Cir. 2013) (not testimonial); United States v. Ignasiak, 667 F.3d 1217, 1231 (11th Cir. 2012) (testimonial); Hensley v. Roden, 755 F.3d 724, 733-34 (1st Cir. 2014) (testimonial question is unsettled) ). In his objection to the R & R, Petitioner cited the same cases. See ECF No. 39 ¶ 33.
Undaunted by the unsettled law, Petitioner argues that his claim is not necessarily defeated. ECF No. 6 at 14. Petitioner argues that the state courts should have applied the general principles from the Supreme Court's precedents to his case, and they acted unreasonably by not doing so. See id. at 14-15 (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ). In support, Petitioner contends:
Where there is no case directly on point, ADEPA permits relief if a state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.
*434 Id. at 15 (quoting Williams, 529 U.S. at 407, 120 S.Ct. 1495 ) (alterations and quotation marks omitted).
Petitioner's argument rests on unsound ground, and a fuller investigation of the quoted passage reveals that the legal test averred by Petitioner is not Supreme Court precedent. Petitioner's quote from Williams is misleading because the context and surrounding discussion were not provided. Before this quoted passage, the Supreme Court stated that "[t]he Fourth Circuit's interpretation of the 'unreasonable application' clause of § 2254(d)(1) is generally correct." Williams, 529 U.S. at 407, 120 S.Ct. 1495 (emphasis added). Later in the opinion, the Supreme Court stated that the Fourth Circuit's holding regarding the "unreasonably refuse[s] to extend" principle had "some problems of precision." Id. at 408, 120 S.Ct. 1495. And further on, the Supreme Court explained that the case at hand did not require resolving the correctness of the Fourth Circuit's approach, and so it declined to do so, and did not hold that the approach was valid. Id. at 408-09, 120 S.Ct. 1495. In context, then, it is clear the quoted legal principle is a not a pronouncement by the Supreme Court of the law, but a recitation of the Fourth Circuit's view.
Fatally undermining Petitioner's argument, the Supreme Court has since unequivocally rejected the Fourth Circuit's approach. In a later opinion, the Supreme Court explained that it had taken "no position on the Fourth Circuit's further conclusion that a state court commits AEDPA error if it 'unreasonably refuses to extend a legal principle to a new context where it should apply.' " White v. Woodall, 572 U.S. 415, 425, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014) (alteration omitted) (quoting Williams, 529 U.S. at 408-09, 120 S.Ct. 1495 ). Indeed, the Supreme Court explained that in an opinion issued two months after Williams, a plurality had "paraphrased" the Fourth Circuit's concept but did not grant relief on that basis. Id. (citing Ramdass v. Angelone, 530 U.S. 156, 166-70, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000) (plurality opinion) ).
The Supreme Court then put an end to the matter, unequivocally rejecting the approach:
[T]his Court has never adopted the unreasonable-refusal-to-extend rule on which respondent relies. It has not been so much as endorsed in a majority opinion, let alone relied on as a basis for granting habeas relief. To the extent the unreasonable-refusal-to-extend rule differs from the one embraced in Williams and reiterated many times since, we reject it.
Id. at 426, 134 S.Ct. 1697 (emphasis added).
Ultimately, the Supreme Court in White explained the duty of state courts to follow clearly established Federal law, and under what circumstances it would be unreasonable for state courts to not apply the law to a given set of facts:
[S]tate courts must reasonably apply the rules squarely established by this Court's holdings to the facts of each case. The difference between applying a rule and extending it is not always clear, but certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt. The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question.
Id. at 427, 134 S.Ct. 1697 (citations, quotation marks and alterations omitted; emphasis added).
*435 The foregoing exposition shows why Petitioner's unreasonable-failure-to-extend argument fails for two reasons. First, as already stated above, there is no "clearly established Federal law" or "squarely established" rules concerning autopsy reports.
Second, whatever the clearly established law is, the Circuit Courts disagree about how to apply it to autopsy reports, thus it is not "so obvious" on how to apply existing, clearly established Federal law such that there is no "fairminded disagreement."
In response to the R & R, Petitioner argues several reasons why autopsy reports should be deemed testimonial. See ECF No. 39 ¶¶ 34-40. Whatever the merits of Petitioner's argument in his objection, based on entries in Black's Law Dictionary and a hypothetical example, the Court must still deny the Petition on Ground Two. Although Black's Law Dictionary is a staple item for judges, lawyers, and law students alike, that venerable lexicon is simply not the authority that this Court must look to in order to resolve the merits of a § 2254 petition.
B. Determination of the facts
Petitioner argues that the Trial Court unreasonably determined facts by finding that Dr. Hood was unavailable to testify. ECF No. 6 at 17. Petitioner asserts, without support, that Dr. Hood "was in the general area and susceptible to subpoena." Id. at 18.
Petitioner's argument is rendered moot by this Court's findings discussed above. The Trial Court was not required to make any factual findings about Dr. Hood's unavailability to testify because the autopsy reports were not deemed to be testimonial. Absent a determination that the autopsy reports were testimonial, and without a proper hearsay objection requiring resolution, the "unreasonably determined facts" argument is meritless.
C. Conclusion
The Court finds that the Petition lacks merit on Ground Two, and therefore denies the Petition on this ground.
Before leaving this topic, the Court notes the testimony provided by Dr. Collins, and the objections and discussions at trial. There was no actual dispute that both Ms. Labance and Mr. Conner died of gunshot wounds and that Dr. Collins was competent to provide expert testimony to that effect even without the autopsy reports. First, aside from the autopsy reports, the photographs showed the wounds made by the multiple 9mm bullets in each victim, and because the victims were shot at close enough range, the photographs even showed the stippling patterns on the skin of the victims. Second, as an expert, Dr. Collins was capable of testifying about the effects of these gunshot wounds. Third, defense counsel agreed that the cause of death was not in dispute:
Trial Court: It's clearly a shooting. It's not like it's some questionable medication or something like that. It's clearly a shooting. What's the big deal here? Cause of death, let's see, gunshot wound.
* * *
Am I wrong? * * *
Defense Counsel: No.
* * *
Trial Court: I mean, is the wound path something that is in dispute or something that is critical to the rendering of the opinion as to the cause of death, that it was gunshots?
Defense Counsel: Not that I know.
Trial Court: Multiple gunshot wounds ?
*436 Defense Counsel: Not that I know.
ECF No. 30-2 at 153:24-154:8; 156:1-8.
With the cause of death determinable from other evidence, and defense counsel not disputing the cause of death, even if Petitioner's Confrontation Clause were to be successful, it would not warrant overturning his conviction on the basis that the cause of death of either victim was not proven beyond a reasonable doubt.
IV. GROUND FOUR -- INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE A RULE 600 CLAIM
Petitioner's ineffective assistance claim premised on a failure to file a motion seeking relief for the Commonwealth's alleged violation of Rule 600 went through one complete round of appellate review by the state courts. Therefore, the Court may consider the merits of Petitioner's argument in support of his petition for habeas relief.
The merits of Johnston's ineffectiveness claim turn solely on the state law question of whether there was any merit to bringing a motion to dismiss the case with prejudice for failing to comply with Rule 600. The Superior Court considered and analyzed the facts of the delays in bringing the case to trial, who was responsible, and the diligence of the Commonwealth, and ruled that there was no merit to a claim that Rule 600 had been violated. See ECF No. 23-3.
This Court must accept the Superior Court's conclusions of state law in applying Pennsylvania's rules. Bradshaw, 546 U.S. at 76, 126 S.Ct. 602 ; Rountree, 640 F.3d at 539. Thus, this Court is presented with an argument that trial counsel was ineffective for failing to raise a meritless claim. Such a claim of ineffectiveness fails because "there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." United States v. Bui, 795 F.3d 363, 366-67 (3d Cir. 2015) (quoting United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ).
The Court denies the Petition on Ground Four premised on failing to bring a motion for violating Rule 600.
V. GROUND FOUR -- INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE A SIXTH AMENDMENT CLAIM
Petitioner's ineffective assistance claim premised on a failure to file a motion seeking relief for the Commonwealth's violation of the Sixth Amendment did not go through one complete round of appellate review by the state courts. Furthermore, Petitioner has not shown that there was cause for the failure to present the claim to the state courts or actual prejudice as a result of the alleged violation of federal law. Finally, there will not be a fundamental miscarriage of justice if the claim is not considered. Therefore, the Court may not rule on the merits of this claim.
A. The R & R and Petitioner's Objections
In the R & R, Magistrate Judge Sitarski explained her findings in a footnote that "[t]o the extent that Petitioner alleges counsel was ineffective for failing to raise a Sixth Amendment speedy trial claim, this ineffectiveness claim is unexhausted and procedurally defaulted." ECF No. 32 at 22 n.14.
Petitioner's objections to the R & R on this ground argue otherwise--the claim is exhausted and not procedurally defaulted, therefore this Court can review the merits. ECF No. 39 ¶¶ 41-75. First, on whether the claim was properly presented to the PCRA Court, Petitioner argues that "it would be clearly unfair and prejudicial to deny your Petitioner this claim based upon *437 PCRA counsel's incompetent bald assertion regarding Rule 600 and the Sixth Amendment." Id. ¶ 42. Following this description of attorney Cotter's efforts, Petitioner argues that Rule 600, the federal Speedy Trial Act ( 18 U.S.C. §§ 3161 - 74 ), and the Sixth Amendment are "co-extensive ... meaning that they are one [and] the same and a claimed violation of [ Rule 600 ] is a claimed violation of the Sixth Amendment." Id. ¶ 43. Petitioner then builds on his one-and-the-same proposition to argue that the state courts had fair notice of his Sixth Amendment claim. Id. ¶¶ 43-49. Finally, Petitioner argues the merits of the unduly-delayed prosecution claim and the merits of the ineffectiveness claim. Id. ¶¶ 50-75.
B. Petitioner's claim is unexhausted and procedurally defaulted
This case presents an issue stemming from disparities between initial pro se filings and subsequent counseled filings. To determine whether Petitioner has exhausted his claim, the Court must determine whether Petitioner presented his Sixth Amendment claim in such a fashion as to give the state courts "an initial opportunity to pass upon and correct" the alleged violation. Picard, 404 U.S. at 275, 92 S.Ct. 509 (internal quotation marks omitted).
Pennsylvania's courts reject petitions that would require combining the filings of a petitioner and his counsel--so-called "hybrid petitions." See, e.g., Commonwealth of Pa. v. Cooper, 611 Pa. 437, 27 A.3d 994, 1000 & n.9 (2011) ("[T]he disapproval of hybrid representation is effective at all levels" in Pennsylvania's courts); Hatcher v. Ct. of Common Pleas of Phila. Cnty., 629 Pa. 99, 104 A.3d 1155 (2014) (dismissing petition for writ of mandamus as an "improper attempt[ ] at hybrid representation"); Castillo v. All Jane/John Does Staff/Supervisors from PA Ct. of Common Pleas Clerk of Cts, 672 F. App'x 178, 179 (3d Cir. 2016) (Pennsylvania's "state courts would not entertain hybrid representation").
At least one court within the Eastern District has faced a situation involving differences between pro se and counseled filings. See Blount v. Coleman, Civil Action No. 13-3094, 2014 WL 5317766, at *6-8 (E.D. Pa. Oct. 17, 2014). In Blount, the prisoner filed his initial PCRA petition pro se, listing a speedy trial Sixth Amendment claim. Id. at *7. After filing the petition, the prisoner then obtained counsel who filed an amended petition presenting only a Rule 600 claim. Id. The prisoner later filed an appeal of the PCRA decision linking the Rule 600 claim to a Sixth Amendment claim. Id. The Superior Court "acknowledged" that both claims were raised but only addressed the Rule 600 claim. Id. The district court reviewing the habeas petition found that the prisoner in Blount had fairly presented the Sixth Amendment claim, and then proceeded to address the merits of that claim. Id.
Petitioner's case has important differences from Blount. Unlike in Blount, the federal claim here was not presented to the PCRA Court or Superior Court for the following three reasons. ECF No. 23-6, Ex. A-1 at 7. First, Petitioner accepted representation by counsel during the PCRA proceedings. Petitioner did not object when his counsel filed the amended PCRA petition. In-so-doing, Petitioner effectively adopted the amended PCRA petition and disavowed the pro se version (the original PCRA petition). Thus, the only petition before the PCRA Court was the amended PCRA petition because the PCRA Court, like any other court in Pennsylvania, would not consider the pro se-drafted petition alone or in conjunction with the counsel-drafted petition.
*438 Second, the amended PCRA petition only vaguely alludes to federal constitutional rights. The background to the case and the arguments were premised on state law ( Rule 600 ). The PCRA Court was not presented with a Sixth Amendment-based claim.
Third, the appeal of the PCRA Court's decision also makes only a glancing referencing to the Sixth Amendment, again in the context of Rule 600. The argument in the brief concerns Rule 600, not the Sixth Amendment. The Superior Court was not fairly notified of a Sixth Amendment-based challenge.
Furthermore, unlike in Blount, neither the PCRA Court nor the Superior Court acknowledged that there even was a Sixth Amendment-based claim to consider.
Placing the matter in context, and under the circumstances of this case, it is plain to see that the state courts were not presented with an ineffective assistance of counsel claim premised on a failure to file a Sixth Amendment challenge. Accordingly, Petitioner's federal claim is unexhausted, and given the time bar, procedurally defaulted. See ECF No. 32 at 22 n.14, 24 n.16.
Under the AEDPA, the Court may not consider the merits of Petitioner's Sixth Amendment-based federal claim unless Petitioner demonstrates either: 1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a fundamental miscarriage of justice.
Petitioner cannot meet either of these two tests. First, he cannot show cause for the default that stems from some external impediment preventing him or his counsel from constructing or raising the claim. Petitioner has demonstrated that he is capable of making arguments and conducting "jailhouse lawyering." There is no showing that both Petitioner and his counsel were prevented from raising the claim. Second, Petitioner cannot show that there was a fundamental miscarriage of justice. Petitioner has not shown that there is any new evidence at issue that if considered would make it more likely than not that no reasonable juror would have convicted him.
Accordingly, the Court cannot review Petitioner's Sixth Amendment-based claim.
C. The merits of the Sixth Amendment-based claim
Even if the Court were to consider Petitioner's claim of ineffective assistance of counsel for failure to raise a Sixth Amendment challenge, his argument lacks merit because the underlying Sixth Amendment challenge would have lacked merit. Accordingly, relief on this ground could not be granted even if the claim was properly before the Court.
1. The Sixth Amendment and Rule 600 are not Co-Extensive
To be clear on the nature of the Sixth Amendment claim now at issue, the Court rejects Petitioner's argument that Rule 600 and the Sixth Amendment are co-extensive in regard to the United States Constitution's guarantee of the right to a speedy and public trial. While Rule 600 sets a time limit, with various rules for determining how to calculate and assess delays, the Sixth Amendment has no such time limit or rules, and so facially the two are not coextensive. See also Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991) (Pennsylvania's speedy trial rule "does not define the contours of the federal constitutional right to a speedy trial").
2. Barker Analysis
The Constitution's guarantee to a speedy trial is not "quantified into a specified number of days or months." Barker v. Wingo, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). To determine whether there has been a deprivation *439 of the right to a speedy trial, the court must use "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." Id. at 530, 92 S.Ct. 2182. Four factors are considered: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. Id.
In conducting the speedy trial analysis, "none of the four factors" is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Id. at 533, 92 S.Ct. 2182. Instead, the "factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." Id.; see also Vanlier v. Carroll, 384 F. App'x 155, 158 (3d Cir. 2010) (balancing of all four factors required).
The Court finds that, on balance, Petitioner has not shown that there was merit to a claim that he was deprived of his Sixth Amendment right to a speedy trial. The Court has considered the reasons for the delays with the presumption that the factual findings of the Superior Court are correct, unless the petitioner presented clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) ; Miller-El v. Cockrell, 537 U.S. 322, 341, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (clear and convincing standard in § 2254(e)(1) applies to factual issues). In doing so, the Court presumes both explicit and implicit findings of fact are correct. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).
3. Factor one: length of delay
To trigger a speedy trial analysis, the petitioner "must allege that the interval between accusation [or arrest] and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." Doggett v. United States, 505 U.S. 647, 651-52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citing Barker, 407 U.S. at 530-31, 92 S.Ct. 2182 ). "Depending on the nature of the charges, the lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year." Id. at 652 n.1, 112 S.Ct. 2686.
"If the [petitioner] makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Id. at 647, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 533-34, 92 S.Ct. 2182 ). Once the showing is made, the court must consider and balance all of the Barker factors. Id.; see also Vanlier, 384 F. App'x at 158 (admonishing the state court for conducting a "short-circuited" analysis that focused only on the prejudice factor).
Here, Petitioner asserts variously that 915 days (ECF No. 1 at 15) or 31 months (see, e.g., ECF No. 39 ¶ 52) elapsed between his arrest and trial in the Labance case. Whichever of these two periods is considered, the length of time (about two and a half years) is sufficient to trigger the initial presumption that Petitioner was prejudiced.
To be clear on the number of days at issue, the Superior Court found that the criminal complaint was filed on July 14, 2006 and the trial started on February 17, 2009. ECF No. 23-3 at 10. This is a total of 949 days, or about 31 months.
4. Factor two: reason for delay
For the second factor, if the government has exercised "reasonable diligence" between arrest and trial, a petitioner's claim will fail. Doggett, 505 U.S. at 656, 112 S.Ct. 2686. Such a result will "generally follow as a matter of course however great the delay, so long as [the petitioner does] not show specific prejudice to his defense." Id. On the other hand, if the government intentionally delays bringing *440 the case to trial in order "to gain some impermissible advantage at trial," the court will weigh that fact "heavily against the government." Id.
Negligent conduct "occupies the middle ground," and neither compels relief nor precludes relief, even if the petitioner cannot show how he has been prejudiced. Id. at 656-57, 112 S.Ct. 2686. But negligence "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." Id. at 657, 112 S.Ct. 2686. Negligence and overcrowded courts are "more neutral reason[s]," and they weigh less heavily against the government. Gov't of Virgin Islands v. Pemberton, 813 F.2d 626, 628 (3d Cir. 1987).
"[T]oleration of negligence varies inversely with its protractedness." Doggett, 505 U.S. at 657, 112 S.Ct. 2686 (citing Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) ). Thus, "to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." Id.
"Findings on the cause of the delay are entitled to a § 2254(d) presumption of correctness if petitioner had a fair opportunity to present his version of events and the state's findings on the issue are fairly supported by the record." Hakeem v. Beyer, 990 F.2d 750, 767 (3d Cir. 1993).
During the 949 days between arrest and trial, there were several delays caused by the Petitioner and the Trial Court. ECF No. 23-3 at 10-12. The PCRA Court prepared a chart listing the case chronology from the time between the arrest and trial. See ECF No. 1, Ex. A at 27-29. The chart was based on the state court docket and testimony adduced at the PCRA hearing held on November 25, 2013. See ECF No. 1, Ex. A; ECF No. 30-6.
Several delays are attributable to the Petitioner, and those amount to 425 days in total. ECF No. 1, Ex. A at 27-29 (7/19/2006-8/2/2006; 8/30/2006-10/3/2006; 11/16/2006-12/13/2006; 12/13/2006-1/10/2007; 1/10/2007-1/11/2007; 1/11/2007-2/1/2007; 8/6/2007-4/23/2008; 9/15/2008-10/10/2008; 11/10/2008-11/24/2008; 11/24/2008-2/17/2009). Of the remaining 524 days, 261 days were attributable to the Trial Court: a period of 176 days was caused by the Trial Court judge's need for surgery; a period of 85 days was caused by the Trial Court's scheduling error. Id. (4/23/2008-9/15/2008). Thus, taking into account the delays by Petitioner and the Trial Court, only 263 days were attributable to the Commonwealth, which is a perfectly reasonable amount of time in which to prepare for and bring a double murder case. The assistant district attorney testified that he was ready to proceed every time the case was listed for trial. Id. Ex. A at 29.
Petitioner has made no showing that the delays attributable to the Commonwealth were due to bad faith or dilatory purposes. Petitioner argued to the Superior Court that the Commonwealth should have sought to have the case assigned to another judge during the delay caused by the judge's surgery. At most, however, the Commonwealth's failure to seek a new trial judge was negligence, and thus at most, the delay of 176 days (six months) would weigh only slightly in Petitioner's favor.
5. Factor three: assertion of speedy trial rights
For the third factor, Petitioner is responsible for asserting the right. Barker, 407 U.S. at 531, 92 S.Ct. 2182. "[F]ailure to assert the right ... make[s] it difficult for a [petitioner] to prove that he was denied a speedy trial."
*441 Id. at 532, 92 S.Ct. 2182. For the Court to consider assigning any weight to this factor, a "petitioner must show he made a 'reasonable assertion of the speedy trial right." Hakeem, 990 F.2d at 764 (alteration omitted) (quoting Pemberton, 813 F.2d at 629 ). The Third Circuit has given only little weight in favor of a petitioner where no formal correspondence or motion was made, and the petitioner only wrote informal correspondence to the trial court. Id. at 766. If a petitioner makes no assertion, the factor weighs against the petitioner's claim. See United States v. Battis, 589 F.3d 673, 681 (3d Cir. 2009) ; United States v. Coleman, No. CIV.A. 10-2013, 2012 WL 1231800, at *4 (E.D. Pa. Apr. 12, 2012) ; United States v. Woods, No. 3:CR-06-063, 2013 WL 1246816, at *7 (M.D. Pa. Mar. 27, 2013).
Here, Petitioner did not assert the right by sending any formal or informal correspondence to the Trial Court. Instead, Petitioner avers that he "asserted this right by bringing it up to his trial counsel on several occasions" who never acted upon Petitioner's assertions. ECF No. 39 ¶ 65. By failing to at least write an informal letter to the Trial Court, Petitioner failed to make any assertion of the right. The third Barker factor weighs against Petitioner.
6. Factor four: actual prejudice
On the fourth factor, "Petitioner must demonstrate non-speculative prejudice." Brown v. United States, No. CIV.A. 12-0710, 2012 WL 6016886, at *2 (W.D. Pa. Dec. 1, 2012) (citing United States v. Robles, 129 F. App'x 736, 738 (3d Cir. 2005) ). Prejudice to the defendant concerns only "the interests ... which the speedy trial right was designed to protect." Barker, 407 U.S. at 532, 92 S.Ct. 2182. There are three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. The impairment of defense is the "most serious" of the interests. Id.
Petitioner does not identify any prejudice that he suffered by the delays. In his original PCRA petition, Petitioner merely states that the delays "so undermined the truth-determining process that no reliable adjudication of guilt or innocence" could have happened. SCR No. D18 ¶ 30. This is a vague and conclusory allegation that he suffered prejudice through his defense being impaired.
When discussing the fourth Barker factor in his objections to the R & R, Petitioner argues that he was "prejudiced by trial counsel's ineffectiveness." ECF No. 39 ¶¶ 65-66. Petitioner further argues that he has been prejudiced by the loss of "an individual's most valuable right, i.e., his right to liberty." Id. ¶ 66. These are irrelevant arguments to the showing of prejudice required by the fourth Barker factor.
Petitioner has not shown how the delays caused him prejudice to his defense at trial. The fourth Barker factor weighs against Petitioner.
7. Conclusion
On balance, Petitioner's failure to assert the claim and the lack of prejudice to Petitioner's case outweigh any loading on the scale that goes in his favor from the second factor because to the extent the second factor weighs against the Commonwealth, it is minor due to the short delay that was caused by no more than negligence.
Accordingly, there is no merit to the argument that Petitioner was denied his speedy trial rights under the Sixth Amendment, thus Petitioner's habeas claim amounts to an argument that trial counsel was ineffective for failing to raise a meritless claim. Once again, such a claim of ineffectiveness fails because "there can be *442 no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." Bui, 795 F.3d at 366-67.
If the Sixth Amendment-based claim was properly before this Court for review, the Court would deny the Petition on this Ground.
VI. GROUNDS ONE, THREE, AND FIVE TO NINE
Petitioner conceded these grounds in his Objection to Report and Recommendation. ECF No. 39 ¶ 20. The Court approves the R & R on these grounds, and denies the Petition on these grounds.
VII. CERTIFICATE OF APPEALABILITY
A petitioner seeking a certificate of appealability must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. 1029 (citing Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) ).
The Court finds that there is no basis to issue a certificate of appealability in this case because Petitioner has not made a substantial showing of the denial of his constitutional rights. See Slack, 529 U.S. at 483-84, 120 S.Ct. 1595.
VIII. CONCLUSION
The Court denies the Petition on all of the grounds raised by the Petitioner.
TYRONE JOHNSTON, Petitioner,
v.
LAWRENCE MAHALLY,[7] DISTRICT ATTORNEY OF COUNTY OF PHILADELPHIA, and ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA Respondents.
ORDER
AND NOW , this 21st day of December, 2018 , after review of the Petition for a Writ of Habeas Corpus (ECF No. 1), Petitioner's Memorandum of Law in Support (ECF No. 6), Respondents' Response to the Petition (ECF No. 23); Petitioner's Traverse to the Response (ECF No. 28); Respondents' Supplemental Exhibits (ECF No. 30); the Report and Recommendation of United States Magistrate Judge Lynne Sitarski (ECF No. 32), and Petitioner's objections thereto (ECF No. 39), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED as follows:
1) The Report and Recommendation (ECF No. 32) is APPROVED as to Grounds One, Three, Five, Six, Seven, Eight, and Nine;[8]
2) Following de novo review, Petitioner's Objections as to the Report and Recommendation (ECF No. 39) are OVERRULED , and the Petition as to Grounds Two and Four is DENIED for the reasons provided in Memorandum issued this same day;
3) The Petition for a Writ of Habeas Corpus (ECF No. 1) is DENIED as *443 to all grounds and DISMISSED WITH PREJUDICE ;
4) A certificate of appealability shall NOT issue; and
5) The Clerk of Court shall mark this case as CLOSED .
AND IT IS SO ORDERED.

In connection with the two murders, Petitioner was also convicted of one count of criminal conspiracy and two counts of possessing instruments of crime.

A comprehensive review of the timeline and complexities of the filings in this case is provided in the R & R. See ECF No. 32 at 1-6.

Respondents submitted portions of the state court record in hard copy. See ECF No. 32 at 1 n.2. The documents were indexed and numbered as D1 to D30. Following the convention used in the R & R, the Court refers to the state court record hard-copy documents as SCR No. __. See id.

The numbering of the grounds follows the numbering in the R & R, which in turn was based on Petitioner's numbering in the Petition. See ECF No. 32 at 4-5.
The grounds not objected to and expressly conceded are: 1) "Rights violated when two independent homicide cases were consolidated into one trial"; 3) "The verdict was not sufficient to support the verdicts of guilty"; 5) "The verdicts of guilty were against the weight of the evidence ..."; 6) "Petitioner was denied his due process rights and effective assistance of both direct and collateral review counsel, when both Counsel Siegel and Cotter failed to seek consolidation of Petitioner's direct appeals for both the Conner and Labance cases. Likewise, Petitioner's PCRA issues should have been consolidated for both the Labance and Conner cases"; 7) "Petitioner was denied the effective assistance of counsel as guaranteed under the United State Constitution, when his Counsel failed to hire a ballistics expert and introduce expert ballistics testimony ..."; 8) "Petitioner was denied the effective assistance of counsel as guaranteed under the United States Constitution, when his Counsel without objection allowed in inadmissible evidence regarding the murder of Paul Chaldek, which Petitioner was not charged or on trial for"; 9) "the States courts violated [Petitioner's] speedy trial rights in which the Six Amendment to the United States Constitution protects." See ECF No. 1 at 10-20; ECF No. 28 at 15; ECF No. 32 at 4-5; ECF No. 39 ¶ 20.

Petitioner states "[f]rom the date the complaint was filed on 7-14-06 to the date of trial on 2-7-09, a period of 915 days had elapsed." ECF No. 1 at 15.

See Rules Governing § 2254 Cases in the United States District Courts, Rule 2.

In his Objection to Report and Recommendation, Petitioner stated that he "objects to the R & R relating to Claims Two and Four, and concedes to the remaining as presented therein." ECF No. 39 ¶ 20.